

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8896 | **DATE** | 1/29/2002 |
| **CASE TITLE** | In Re: UNITED HOMES OF MICHIGAN INC.   00 A 1063   00 B 7290 | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, the decision of the Bankruptcy Court is affirmed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JAN 3 0 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 1/29/2002 | |
| JS | courtroom deputy's initials | 02 JAN 30 AM 7:40 Date/time received in central Clerk's Office | date mailed notice JS mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE:<br><br>UNITED HOMES OF MICHIGAN, INC.,<br>a Michigan corporation,<br><br>    Debtor.<br><br>———————————————————<br><br>DAN VALLEY EXCAVATING, INC.,<br>    Defendant-Appellant.<br><br>v.<br><br>RESIDENTIAL FUNDING<br>CORPORATION,<br>Trustee of DeMert & Dougherty, Inc.,<br><br>    Plaintiff-Appellee. | No. 01 C 8896<br><br>(Appeal From an Order of the United States<br>Bankruptcy Court for the Northern District<br>of Illinois in Adv. No. 00 A 1063<br>(Case No. 00 B 07290)) |

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

    This is an appeal from an interlocutory order of the Bankruptcy Court of the Northern District of Illinois. On October 9, 2001, the Bankruptcy Court entered a Memorandum Opinion and Order finding plaintiff-appellee's Residential Funding Corporation ("RFC") mortgage lien superior to the construction lien of defendant-appellant Dan Valley Excavating, Inc. ("Dan Valley"). For all the following reasons, the decision of the Bankruptcy Court is AFFIRMED.

## BACKGROUND[1]

RFC is in the business of lending money for residential construction. The Debtor, United Homes of Michigan, Inc., was engaged in the construction and sale of residential housing. RFC, the Debtor, along with United Homes, Inc., an Illinois corporation, United Homes of Illinois, Inc., and United Homes, Inc., an Arizona corporation, collectively entered into a loan agreement on May 28, 1996, whereby RFC loaned money to each entity to build residential homes.

In September 1997, RFC and the Debtor entered into a supplemental loan agreement enabling the Debtor to begin the Sienna Pointe Project. The Sienna Pointe Project involved the acquisition of a 96-lot residential subdivision which was ultimately divided into two phases. Phase 1, Sienna Point #1, consisted of 45 lots. Phase 2, Sienna Point #2, consisted of 51 lots. On September 15, 1997, RFC loaned to the Debtor $1,505,000 to enable the Debtor to acquire both Sienna Pointe #1 and Sienna Pointe #2, and to develop Sienna Pointe #1. To secure the loan, the Debtor granted RFC a mortgage lien on Sienna Pointe #1 and #2. Under the agreement, none of the loan proceeds could be used to develop Sienna Pointe #2. RFC recorded the mortgage in Kent County, Michigan on September 17, 1997.

Dan Valley is in the business of excavation, construction and general contracting. Pursuant to a contract with the Debtor, Dan Valley was the general contractor for Sienna Point #2. Dan Valley was not involved with any part of Sienna Pointe #1. Dan Valley began work on Sienna Point #2 on August 13, 1999. On December 6, 1999, Dan Valley recorded a construction lien for the work and materials it used developing Sienna Point #2.

---

[1] The following facts are taken from the Bankruptcy Court's Memorandum Opinion and Order of October 9, 2001.

## JURISDICTION

The Bankruptcy Code provides that interlocutory orders from bankruptcy court may be reviewed with leave of the district court sitting in its appellate jurisdiction. See 28 U.S.C. § 158(a)(3). The district court has broad discretion in determining whether to exercise jurisdiction over interlocutory appeals from the bankruptcy court. Id. The Bankruptcy Code, however, does not provide any guidance for the district court in determining when an interlocutory appeal is appropriate, therefore, the standard set forth in 28 U.S.C. § 1292(b), which governs interlocutory appeals from the district court to the court of appeals, is instructive on the issue. In re Capen Wholesale, Inc., 184 B.R. 547, 549 (N.D.Ill.1995). District courts applying the standard set forth under § 1292(b) in bankruptcy appeals have adopted its three part test. Under the three part test, an interlocutory appeal is appropriate when it: (1) involves a controlling question of law; (2) over which there is substantial ground for difference of opinion; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. See 28 U.S.C. § 1292(b); In re Capen Wholesale, Inc., 184 B.R. at 549. Upon review of the record on appeal, this court finds this interlocutory appeal rests on several controlling issues of law and also finds that pursuit of this appeal will materially advance the termination of this litigation as between Dan Valley and RFC. This court finds that resolution of this matter on appeal will not deplete funds from the bankruptcy estate, but instead will expedite the administration of the bankruptcy estate and expedite the ultimate distribution of estate funds to creditors. Accordingly, this court grants Dan Valley leave to appeal in an exercise of its discretion.

## STANDARD OF REVIEW

On appeal a district court reviews the factual findings of the bankruptcy court under a "clearly

3

erroneous" standard, but reviews conclusions of law de novo. Meyer v. Rigdon, 36 F.3d 1375, 1378 (7th Cir. 1994); In re Roberson, 999 F.2d 1132, 1134 (7th Cir. 1993). A grant of summary judgment is a conclusion of law and the district court "will uphold the entry of summary judgment 'if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law.'" Indiana Ass'n of Homes for the Aging Inc. v. Indiana Office of Medicaid Policy & Planning, 60 F.3d 262, 265- 66 (7th Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)). A party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). Under the standard for summary judgment, there is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511. In reviewing the grant of summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. Anderson, 477 U.S. at 255, 106 S. Ct. at 2513.

In reviewing the facts relied upon by the Bankruptcy Court in granting summary judgment, this court will accept the factual determinations of the Bankruptcy Court unless those determinations are either completely devoid of minimum evidentiary support displaying some hue of credibility or they bear no rational relationship to the supportive evidentiary data. See United States v. Greer, 53 F.3d 334 (7th Cir. 1995) (citing Krasnov v. Dinan, 465 F.2d 1298, 1302 (3rd Cir.1972)). Summary judgment may be affirmed on any ground supported in the record, even if it was not relied upon by the court below. Johnson v. Gudmundsson, 35 F.3d 1104, 1115 (7th Cir. 1994).

## DISCUSSION

On appeal defendant-appellant argues: (1) the Bankruptcy Court did not have subject-matter jurisdiction over the parties' competing lien claims; (2) the Bankruptcy Court erred in granting summary judgment solely on the issue of lien priority; and (3) the Bankruptcy Court erred in granting summary judgment in favor of RFC where there remains issues of fact regarding when RFC's lien was perfected in comparison to when construction began on Sienna Pointe #1. The court will address each argument in turn.

### I. The Bankruptcy Court had proper Subject-Matter Jurisdiction

28 U.S.C §157(b)(1), (b)(2)(A) & (K) provides:

> (1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection
> (2) Core proceedings include, but are not limited to--
> (A) matters concerning the administration of the estate;
> (K) determinations of the validity, extent, or priority of liens;

Dan Valley argues that the Bankruptcy Court did not have subject-matter jurisdiction to hear RFC's complaint because resolution of RFC's complaint would "have absolutely no impact on the United Homes' [Debtor's] estate." Appellant's Brief at 14. Dan Valley asserts that the ranking of competing lien claims will have no impact on the administration of the Debtor's estate since the aggregate amount of secured claims against the estate is fixed at the total amount of sales proceeds. Id. In looking at the record on appeal, the controversy between RFC and Dan Valley involves prioritizing lien claims each holds against the Debtor's estate. Accordingly, upon a literal reading of 28 U.S.C. § 157(b)(1) and (b)(2)(K), the dispute between RFC and Dan Valley constitutes a core proceeding that a Bankruptcy judge may hear.

Dan Valley also argues that since the Debtor has staked no claim upon the pool of secured

5

funds at issue in this case, the priority of lien claims against that pool of funds is out of the Bankruptcy Court's purview. Dan Valley cites to Matter of Xonics, Inc., 813 F.2d 127 (7th Cir. 1987), In re Edwards, 962 F.2d 641, 643 (7th Cir. 1992), and In re Chicago, Rock Island & Pac. R.R., 794 F.2d 1182, 1186-87 (7th Cir. 1987) in support of this proposition.

All three cases cited by Dan Valley stand for the propositions that bankruptcy jurisdiction is designed to provide a single forum for dealing with all claims against a bankrupt's assets, but that bankruptcy jurisdiction does not follow property once it leaves the estate. Matter of Xonics, Inc., 813 F.2d at 131. In this case, none of the Debtor's property has left the Debtor's estate. Although the pool of secured funds was once real estate, Sienna Pointe #2, the subsequent sell of the real estate and pooling of the proceeds does not extinguish bankruptcy jurisdiction. Regardless of whether the Debtor has filed a claim for the pool of secured funds, the proceeds are still a part of the estate and the Bankruptcy Court retains the power to adjudicate all claims as to those proceeds. In the Xonics case, the debtor satisfied all of its secured claims by abandoning the underlying real property to secured creditors. In the Edwards case, the real property at issue had been sold by the debtor free and clear of all liens. In the Rock Island case, the dispute in question involved a former tenant of the debtor and the new owner of the rental property. In this case, the proceeds from a sale of real estate are at issue and those proceeds have not been abandoned by the Debtor and were still a part of the Debtor's estate at the time the Bankruptcy Court rendered is decision prioritizing the lien claims of RFC and Dan Valley. Accordingly, none of the three cases cited by Dan Valley are persuasive. Based upon the facts of this case and 28 U.S.C. § 157(b)(1) and (b)(2)(K), this court finds that the Bankruptcy Court had subject-matter jurisdiction to adjudicate the lien claims of RFC and Dan Valley.

## II. The Bankruptcy Court properly granted partial summary judgment

Dan Valley argues that the Bankruptcy Court erred when it granted partial summary judgment on the specific issue of lien priority because the granting of partial summary judgment is not possible unless partial summary judgment disposes entirely of one or more counts of a complaint or counterclaim. This novel argument is contrary to Rule 56 of the Federal Rules of Civil Procedure and disposal of this argument need not go any further than the text of the rule. Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or *any part thereof*. [Emphasis added].

Accordingly, RFC as the plaintiff in the matter could file a motion under Rule 56(a) with the Bankruptcy Court seeking adjudication of lien priority because the issue of lien priority constitutes a part of RFC's overall complaint. Fed. R. Civ. P. 56(a). Furthermore, on plaintiff's motion under Rule 56(a), if judgment was not rendered upon the whole case or for all relief asked for within the motion, the Bankruptcy Court at that time had the power to ascertain which issues were necessarily left and ready for trial. Fed. R. Civ. P 56(d).

## III. The Merits of the Bankruptcy Court's Ruling

Finally, Dan Valley argues that the Bankruptcy Court erred in granting summary judgment in favor of RFC where there remains issues of fact regarding (1) the outstanding amount of the loan secured by RFC's mortgage lien; and (2) the extent to which RFC advanced funds to the Debtor after improvements were made on either Sienna Pointe #1 or Sienna Pointe #2. Upon review of the record, however, this court finds that there is sufficient evidence in the record to support the grant of

7

summary judgment in favor of RFC. To prevail on summary judgment, RFC had the burden to present sufficient evidence in the record such that when all justifiable inferences were taken in favor of Dan Valley there existed no genuine issue of material fact that RFC's mortgage lien had priority over Dan Valley's construction lien.

The general rule for determining lien priorities is that the lien filed first has priority over those liens which are filed later. United States v. City of New Britain, 347 U.S. 81, 85, 74 S.Ct. 367, 370 (1954). Accordingly, to prevail on summary judgment, it was RC's burden to provide evidence proving that their lien was filed before Dan Valley's lien. Upon review of the record on appeal, it is undisputed that RFC's lien was filed on September 17, 1997, whereas Dan Valley's lien was filed on December 6, 1999. RFC, therefore, sufficiently carried its evidentiary burden establishing the priority of its lien to that of Dan Valley's lien.

In looking at Dan Valley's response to RFC's motion for summary judgment, this court finds that Dan Valley failed to present sufficient evidence in the record to dispute RFC's evidence of first-in-time such as to create a genuine issue of material fact that its construction lien was actually superior to RFC's lien. Both before the Bankruptcy Court and here on appeal, Dan Valley argues first that there exists an issue of fact as to the outstanding balance of RFC's loan to the Debtor. Upon review of the record, however, there is no evidence which demonstrates how much of RFC's loan was outstanding at the time of summary judgment. Furthermore, there is no evidence in the record which demonstrates how the outstanding balance of RFC's supplement loan to the Debtor relates to whether RFC's lien is superior as to Dan Valley's lien. So even though the amount of RFC's loan outstanding is an issue in this case, this issue has not been proven sufficiently material to prevent the granting of summary judgment. Second, Dan Valley argues that under the Michigan Construction Lien Act.

8

M.C.L. § 570.1101 *et. seq.*[2], RFC has failed to carry its evidentiary burden as to when RFC issued its loan to the Debtor in comparison to when Sienna Pointe #1 was first improved upon and that RFC has failed to carry its evidentiary burden as to the extent RFC advanced funds to the Debtor after Sienna Pointe #1 was improved. The Michigan Construction Lien Act ("Construction Lien Act") provides in relevant part:

> (2) A construction lien under this act shall take priority over all garnishments for the contract debt made after commencement of the first actual physical improvement, without regard to the date of recording of the claim of lien.
> . . .
> (4) A mortgage, lien, encumbrance, or other interest recorded before the first actual physical improvement to real property shall have priority over a construction lien arising under this act. The priority of the mortgage shall exist as to all obligations secured by the mortgage except for indebtedness arising out of advances made subsequent to the first actual physical improvement. An advance made pursuant to the mortgage, but subsequent to the first actual physical improvement shall have priority over a construction lien if, for that advance, the mortgagee has received a contractor's sworn statement as provided in section 110, has made disbursements pursuant to the contractor's sworn statement, and has received waivers of lien from the contractor and all subcontractors, laborers, and suppliers who have provided notices of furnishing. Mich. Stat. Ann. § 570.1119.

Upon a literal reading of the Construction Lien Act, the Construction Lien Act stands to protect the rights of contractors and labors against further encumbrances on the property attaching after development of the property has commenced. Accordingly, in response to summary judgment it was Dan Valley's burden to bring forth evidence to create a genuine issue of material fact that despite RFC's first filing of its lien, Dan Valley's construction lien is nonetheless superior RFC's lien under the Construction Lien Act. Dan Valley's argument both in response to RFC's motion for summary judgment and here on appeal, however, confuses who's burden it is under the Construction Lien Act to establish the facts necessary to create an issue of fact.

---

[2]Neither party disputes whether this statute governs this controversy.

Consistent with its confusion of burdens, Dan Valley has failed to present evidence demonstrating how Dan Valley's lien priority has anything to do with the physical improvement date of Sienna Pointe #1 since it is undisputed the Dan Valley had no involvement with the development of Sienna Pointe #1. In response to RFC's motion and here on appeal, Dan Valley simply argues that its construction lien relates back to the date of first actual physical improvement on Sienna Pointe #1 without any evidentiary support. The Bankruptcy Court, in granting summary judgment in favor of RFC, properly rejected Dan Valley's bare allegations and properly distinguished the cases RFC cited in support of its strained relation-back theory. The undisputed facts in the record establishes that Dan Valley had nothing to do with the improvement or development of Sienna Pointe #1. Additionally, the undisputed facts establishes that the proceeds of the supplemental loan to the Debtor was to be used exclusively to improve Sienna Pointe #1 and not for Sienna Pointe #2. Dan Valley has presented no evidence to contradicted these facts and the Bankruptcy Court properly found that the Sienna Pointe Project consisted of two different projects notwithstanding that the land which made up both projects was purchased at the same time and subject to one mortgage. Furthermore, even if the Bankruptcy Court had found that Dan Valley's construction lien on Sienna Pointe #2 did relate back to the date of first physical improvement on Sienna Pointe #1, summary judgment in favor of RFC was still proper in this case because Dan Valley has failed to present evidence which establishes that the date of first improvement of Sienna Pointe #1 was before RFC extended the loan mortgage to the Debtor.

Lastly, Dan Valley argues under the Construction Lien, that Dan Valley's lien has priority of RFC's lien to the extent that RFC extended the Debtor funds after Dan Valley began work on Sienna Pointe #2. Dan Valley, however, has presented no evidence, not here on appeal nor in response to

10

summary judgment, to support this argument. The undisputed evidence on the record states as follows:

> Dan Valley is uncertain as to the extent to which RFC's secured claim against the Property and the Sale Proceeds represents loan advances made after improvements commenced on Phases I or II of the Project of the Property. Appellant Brief at 7.

Accordingly, upon review of the entire record, the Bankruptcy Court was proper in granting summary judgment in favor of RFC. Upon review of the findings of the Bankruptcy Court, RFC has carried its evidentiary burden demonstrated its lien priority and Dan Valley has failed to present any evidence to support any of its claims under the Construction Lien Act.

## CONCLUSION

In response to summary judgment before the Bankruptcy Court and now here on appeal, Dan Valley has simply rested its allegations and has failed to present evidence in the record which would create an issue of material fact that its construction lien has priority of RFC's mortgage lien under any circumstances. Upon thorough review of the Bankruptcy Court's rulings, this court finds that there are no genuine issues of material facts and also finds that was sufficient evidence is the record such that a reasonable fact finder could find in favor of RFC as to its lien priority over Dan Valley. Accordingly, for all the reasons stated above, the decision of Bankruptcy Court is AFFIRMED.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN
United States District Judge

DATE: January 29, 2002

11